UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ZION CLARKE,
RICARDO DEFOUR,
KEVON DEMERIEUX,
ANDERSON STRAKER,
WAYNE PIERRE,
KEVIN NIXON, and
CHRISTOPHER SEALEY,

    Petitioners,

    v.

ERIC HOLDER, Attorney General,
U.S. Department of Justice, <u>et al.</u>,

    Respondents.

Civil Action No. 09-0753 (JDB)

## MEMORANDUM OPINION

On April 13, 2005, Balram Maharaj, a naturalized U.S. citizen, died while being held for ransom in Trinidad. Petitioners in the present case are seven of the defendants who were charged and convicted under 18 U.S.C. § 1203 of conspiracy and hostage taking resulting in death based on those events. They have long sought to have the indictment dismissed, and their convictions invalidated, based on their belief that Maharaj did not meet the qualifications for naturalization, and hence should not have been recognized as a U.S. citizen. <u>See</u> <u>United States v. Clarke</u>, --- F. Supp. 2d ---, 2011 WL 710603, at * 38 (D.D.C. Mar. 2, 2011). To this end, on March 23, 2009, they submitted a formal request to the United States Attorney for the District of Columbia to institute proceedings to revoke the U.S. citizenship of Balram Maharaj pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1451(a), including a proffer of evidence allegedly showing that Maharaj concealed material facts and made fraudulent misrepresentations during his naturalization proceedings. Soon thereafter, they filed this action seeking a writ of mandamus

directing the United States Attorney to institute a § 1451(a) revocation proceeding and cancel Maharaj's certificate of naturalization. See Pet. for Writ of Mandamus, Ex. A, at 2-9.

Respondents have moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), on the grounds that petitioners lack standing to bring this action and that, in any event, they have failed to meet the threshold requirements for relief in the nature of mandamus.[1] Shortly after the motion was filed, petitioners asked to stay this case in order to allocate their time and resources to the criminal trial. Now that the criminal trial has concluded and the post-conviction motions for judgment of acquittal and for new trial have been resolved, this matter is ready for decision. For the reasons explained below, the Court will grant respondents' motion to dismiss.

**I.  Standing**

The issue of standing involves both constitutional limitations on federal court jurisdiction arising from the Article III "case or controversy" requirement and prudential limitations on its exercise where a party is not covered by the statute's "zone of interest." National Ass'n of Home Builders v. U.S. Army Corps of Eng'rs, 417 F.3d 1272, 1287 (D.C. Cir. 2005). Respondents move to dismiss this action on the ground that petitioners lack "prudential standing" under the denaturalization statute, 8 U.S.C. § 1451, because they do not fall within the "zone of interest"

---

[1] The parties also filed briefs in the criminal case addressing whether petitioners were entitled to mandamus relief, in the context of Clarke's motion to stay the criminal trial. See United States v. Clarke, 628 F. Supp. 2d 1, 10-13 (D.D.C. 2009) (denying Clarke's motion to stay, finding no likelihood of success on the petition for writ of mandamus). The Court takes judicial notice of those filings. See United States v. Clarke, Cr. 06-102 (D.D.C.) (Demerieux's Mot. to Dismiss (ECF #390); Gov't Opp'n (ECF #439); Straker's Reply (ECF #451) Defs.' Joint Reply and Joint Mot. for Stay (ECF #452); Demerieux's Reply (ECF #453); see also Defs.' Mot. for Reconsideration (ECF #548); Gov't Opp'n (ECF #554)).

covered by that statute.  Before addressing prudential standing, however, the Court must determine whether petitioners have Article III standing.

> It is well-settled that there are three minimum elements necessary to establish standing:
>
> First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations and footnote omitted)); accord Center for Law and Educ. v. Dep't of Educ., 396 F.3d 1152, 1157 (D.C. Cir. 2005).

Petitioners contend that they have standing because they have suffered injury in the form of their convictions under the hostage taking statute, 18 U.S.C. § 1203, which was applied to them because the victim held the status of a naturalized U.S. citizen, and that the respondents have caused this injury by wrongfully failing to initiate revocation of naturalization proceedings. See Pet'r's Opp'n at 3, 6.  They then make the conclusory assertion that "a Court order directing the [d]efendants to initiate revocation of naturalization proceedings . . . will remedy the injury." Id. at 4.  However, the third element of standing -- redressability -- is lacking here because, even if petitioners prevailed on their mandamus petition, the outcome of the requested revocation proceeding would remain unknown.  Under 8 U.S.C. § 1451(a), a district court -- not the United States Attorney -- makes the decision whether to revoke a certificate of naturalization. Furthermore, the government "carries a heavy burden of proof in a proceeding to divest a naturalized citizen of citizenship" -- that is, the evidence must be "'clear, unequivocal, and convincing,' and 'must not leave the issue in doubt.'" Fedorenko v. United States, 449 U.S. 490,

505 (1981) (quoting Schneiderman v. United States, 320 U.S. 118, 125 (1943)). It is wholly speculative whether a United States Attorney could meet this high burden of proof, and whether a district court in a § 1451(a) proceeding ultimately would issue an order revoking the certificate of naturalization, especially in light of evidentiary problems that may arise so long after Maharaj's death and his inability to defend himself. In light of the speculative nature of the outcome of a § 1451(a) proceeding, petitioner's injury -- their hostage taking convictions -- is not redressable by an order directing respondents to initiate such a revocation proceeding.[2]

Even if petitioners could demonstrate that they have Article III standing, they may pursue this case only if they also have prudential standing. Under the doctrine of prudential standing, petitioners must satisfy "the requirement that [their] complaint fall within the zone of interests protected by the law invoked." Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 12 (2004). "Under the zone-of-interest test, '[t]he essential inquiry is whether Congress intended for a particular class of plaintiffs to be relied upon to challenge agency disregard of the law.'" Idaho Pub. Util. Comm'n v. Interstate Commerce Comm'n, 35 F.3d 585, 591 (D.C. Cir. 1994) (quoting Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399 (1987)). "The test is not meant to be especially demanding." Id. "The zone-of-interest test . . . is intended to 'exclude only those whose interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" Muir v. Navy Federal Credit

---

[2] Moreover, even assuming the result of the contemplated § 1451(a) proceeding were a judicial order canceling the certificate of naturalization, it is unclear whether petitioners would be entitled to vacatur of their convictions. As the Court noted in an earlier opinion, the government's position is that, "even if Maharaj's citizenship were to be revoked post-mortem, and deemed *void ab initio*, the Court would still have jurisdiction over [the] criminal action because Maharaj was cloaked in U.S. citizenship at the time of the hostage taking events." Clark, 628 F. Supp. 2d at 12 n.16.

Union, 529 F.3d 1100, 1106-07 (D.C. Cir. 2008) (quoting Clarke v. Sec. Indus. Ass'n, 479 U.S. at 399).

Respondents argue that petitioners fail to meet the zone-of-interest test because nothing in the statute suggests that Congress intended to create rights in third parties to pursue -- or force the prosecution of -- denaturalization actions. See Resp'ts' Mem. at 10-11. Respondents further contend that the statute should not be read to create such rights in third parties in light of case law holding that private citizens generally lack a cognizable interest in the investigation or prosecution of another. Id. at 8-9.

Although the zone-of-interest test is not demanding, petitioners have failed to satisfy it. Indeed, they make no claim whatsoever that they fall within the "zone of interest" protected by § 1451. Nonetheless, the Court has conducted an independent review of the statute and case law and determined that they do not come within the zone of interest. First, the plain language of § 1451(a) -- the primary subsection at issue -- contains no indicia that third parties to the original naturalization proceeding are within the zone of interest:

> It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation, and such revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate of naturalization shall be effective as of the original date of the order and certificate . . . .

The only two parties referenced are the United States Attorneys and the naturalized person. Subsection (b), captioned "Notice to Party," reinforces the reading that third parties to the naturalization are not in the zone of interest, insofar as it creates rights only in one party other

than the government -- the party to whom naturalization was granted:

> The party to whom was granted the naturalization alleged to have been illegally procured or procured by concealment of a material fact or by willful misrepresentation shall, in any such proceedings under subsection (a) of this section, have sixty days' personal notice, unless waived by such party, in which to make answers to the petition of the United States; and if such naturalized person be absent from the United States or from the judicial district in which such person last had his residence, such notice shall be given either by personal service upon him or by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought.

Indeed, § 1451 indicates that not even the spouses and children of the naturalized citizen subject to revocation proceedings have rights in the process. See § 1451(c) (providing that persons who claim citizenship through the naturalization of a parent or spouse in whose case there is a revocation under subsection (a) "shall be deemed to have lost and to lose his citizenship").[3]

The Immigration and Nationality Act is a "regulatory statute that establishes the circumstances under which people may be admitted to the United States," and "imposes duties on federal departments and agencies," without reference to any special class to be benefitted. See United States v. Richard Dattner Architects, 972 F. Supp. 738, 743 (S.D.N.Y. 1997) (holding that temporary workers had no standing to assert a claim under the INA because the statutory language focused on the government's duties and did not indicate any Congressional intent to create a remedy in such third parties). In this context, there is "far less reason to infer a private remedy in favor of individual persons where Congress, rather than drafting the legislation with an unmistakable focus on the benefited class, instead has framed the statute simply as a general prohibition or command to a federal agency." Id. (quoting Universities Research Assoc., Inc. v.

---

[3] The remaining subsections of § 1451 address other grounds for revocation and the logistics for cancellation of the certificate. See § 1451(d)-(g).

Coutu, 450 U.S. 754, 772 (1981)). Hence, the Court concludes that third parties, such as the petitioners here, are not within the zone of interest of § 1451.

This reading is confirmed by the longstanding principle that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Sargeant v. Dixon, 130 F.3d 1067, 1069 (D.C. Cir. 1997) (quoting Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)); accord In re Kaminski, 960 F.2d 1062, 1064 (D.C. Cir. 1992); Community for Creative Non-Violence v. Pierce, 786 F.2d 1199, 1201 (D.C. Cir. 1986); Ruiz Rivera v. Mukasey, No. 08-5015, 2008 WL 4726052, at *1 (D.C. Cir. June 12, 2008). Applying this principle, this Circuit has held that private citizens may not sue to compel the appointment of an independent counsel to investigate and prosecute violations of federal law under the Ethics in Government Act, where the statutory text is "barren of any evidence that Congress intended to create procedural rights in members of the public to have their allegations investigated." In re Kaminski, 960 F.2d at 1064. Like the Ethics in Government Act, § 1451 is barren of any language that Congress intended to create a benefitted class who could force the investigation or denaturalization of a U.S. citizen; indeed, it is bereft of any language whatsoever granting any third party special rights or benefits. In particular, third parties such as petitioners -- persons who have committed crimes against a person granted naturalized status -- are simply so "marginally related" (Idaho Public Util. Comm'n, 35 F.3d at 591) to the interests covered by § 1451 that they fall far outside of the statute's zone of interest.

## II. Mandamus

Respondents also move to dismiss this action for failure to state a claim upon which relief may be granted, on the ground that petitioners fail to meet the threshold requirements for relief in

the nature of mandamus. They argue that, under Heckler v. Chaney, 470 U.S. 821 (1985), and its progeny, investigations and prosecutions like that sought by petitioners are presumptively at the discretion of the Department of Justice and hence cannot be compelled through mandamus. See Resp'ts' Mem. at 2-7. In response, petitioners argue that the presumption of unreviewable prosecutorial discretion is rebutted by 8 U.S.C. § 1451, which creates a clear duty to act and provides guidance that limits respondents' discretion. Pet'rs' Opp'n at 4-12.

Under the Mandamus Act, 28 U.S.C. § 1391, a court has jurisdiction to grant mandamus relief only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." Fornaro v. James, 416 F.3d 63, 69 (D.C. Cir. 2005) (quoting Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002)); accord In re Medicare Reimbursement Litig., 414 F.3d 7, 10 (D.C. Cir. 2005). "[I]f there is no clear and compelling duty under the statute as interpreted, the district court must dismiss the action." In re Cheney, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc). Even if the petitioner satisfies all three elements, whether the extraordinary remedy of mandamus should issue is discretionary. Id.

The parties have focused on whether the second element -- a "clear duty to act" -- has been satisfied, and in particular, whether the United States Attorney for the District of Columbia has a nondiscretionary duty under 8 U.S.C. § 1451 to initiate proceedings to revoke Maharaj's citizenship. Clarke originally argued that he was entitled to mandamus relief based on the use of the term "shall" in § 1451(a): "[i]t shall be the duty of the United States attorneys" to institute such proceedings "upon affidavit showing good cause" -- here, the affidavits of Reita Pendry and George Steel. See Pet. for Writ of Mandamus at 4 & Ex. A. Respondents counter that an agency's decision not to prosecute or enforce is generally committed to an agency's absolute

discretion under Heckler v. Chaney, and in light of that discretion, mandamus is not available. Resp'ts' Mem. at 4-7.

This Court first ruled on this issue in the context of resolving petitioners' motion to stay the criminal trial until the mandamus petition was resolved and the sought-after revocation proceeding was concluded. In evaluating the likelihood of success on the mandamus petition, the Court considered the Heckler v. Chaney argument, and held that § 1451(a) did not impose a mandatory duty on the United States Attorney to institute a revocation proceeding, notwithstanding the use of the term "shall":

> [I]n Heckler v. Chaney, 470 U.S. 821, 835 (1985), the Supreme Court has instructed that when "shall" is used in an enforcement provision, it should be construed to confer discretion on an agency unless the statute or regulations provide substantive standards that constrain the exercise of discretion. Id. (holding that statute providing that violators "shall be imprisoned . . . or fined" did not mandate prosecution); see Dubois v. Thomas, 820 F.2d 943, 948-49 (8th Cir. 1987) (deferring to agency interpretation that "shall" should be construed to confer discretion); City of Yakima v. Surface Transp. Bd., 46 F. Supp. 2d 1092, 1099-1100 (E.D. Wash. 1999) (same). More recently, the Supreme Court addressed whether "shall" imposed a mandatory duty to take enforcement action in Town of Castle Rock v. Gonzales, 545 U.S. 748 (2005). The Court declined to interpret "shall" as imposing a mandatory duty in the context of determining when citizens have an entitlement to enforcement of laws under the due process clause. See 545 U.S. at 760-61. The Court reaffirmed "the deep-rooted nature of law-enforcement discretion even in the presence of seemingly mandatory legislative commands," and recognized that those charged with enforcing the law "must use some discretion in deciding when and where to enforce." Id. Considering the Supreme Court's admonition that the government "carries a heavy burden of proof in a proceeding to divest a naturalized citizen of citizenship" -- that is, "clear, unequivocal, and convincing evidence" (Fedorenko v. United States, 449 U.S. 490, 505 (1981)) -- a U.S. attorney must necessarily possess discretion under § 1451(a) to determine, at a minimum, in which cases he or she is likely to meet that burden. In short, § 1451(a) does not create a mandatory duty to institute proceedings to revoke naturalization . . . .

Clarke, 628 F. Supp. 2d at 11 (footnote omitted). Hence, the Court denied the motion to stay the criminal trial, finding no likelihood of success on the mandamus petition.

This Court also previously explained that, under Heckler v. Chaney, an agency failure to take enforcement action is "presumptively unreviewable" because it is committed to agency discretion by law. Id. at 11 & n.12. The Court recognized that the presumption may be overcome where the substantive statute or regulation provides guidelines for the agency to follow in exercising its enforcement authority, but found no grounds for overcoming the presumption on the record presented. Id.

Since that time, petitioners have come forward with additional arguments in support of their claim that § 1451 creates a nondiscretionary duty to act and rebuts the presumption of unreviewability. They argue that § 1451 provides meaningful guidance that limits the exercise of a United States' Attorney's prosecutorial discretion by setting forth certain types of misconduct that can warrant revocation of naturalization: refusal to testify before a congressional committee (§ 1451(a)), and membership in a disqualifying organization (§ 1451(b)).[4] But these provisions do not create a nondiscretionary duty to act on petitioner's request to initiate revocation proceedings, nor do they rebut the Heckler v. Chaney presumption of unreviewability. First, nothing in the record suggests that these types of misconduct are relevant to the petition here. In

---

[4] Petitioners also cite § 1451(e), which provides that "[w]hen a person is convicted under section 1425 of title 18 of knowingly procuring naturalization in violation of law, the court in which such conviction is had shall thereupon revoke" the person's citizenship. That provision is irrelevant to whether a United States Attorney must initiate a revocation proceeding under § 1451(a). Rather, it imposes a duty on the presiding court to issue an order revoking citizenship when a conviction is returned. See United States v. Latchin, 554 F.3d 709, 716 (7th Cir. 2009) ("Under 8 U.S.C. § 1451(e), a conviction for knowingly procuring naturalization in violation of the law results in automatic denaturalization. The district court's revocation order was therefore . . . required according to the immigration code."); United States v. Inocencio, 328 F.3d 1207, 1209 (9th Cir. 2003) ("Revocation of naturalization is mandatory upon conviction of naturalization fraud in violation of section 1425; Congress plainly contemplated that district courts having jurisdiction over criminal trials would automatically revoke naturalization upon such convictions.").

petitioners' § 1451(a) affidavits and supporting papers, there is no mention of Balram Maharaj being called upon to testify before a congressional committee or being a member of a disqualifying organization.[5]  Thus, those provisions offer no guidance on how to evaluate the exercise of prosecutorial discretion for the much larger body of claims of fraud and misrepresentation beyond those two discrete scenarios.  Moreover, even if those few criteria were relevant to Maharaj, § 1451 still offers no guidelines for assessing when the United States should pursue one denaturalization matter over another.[6]  The rationale behind the Heckler v. Chaney presumption of unreviewability is fully applicable in the absence of such guidelines.  As the Supreme Court explained:

> an agency decision not to enforce involves a complicated balancing of a number of factors which are peculiarly within its expertise.  Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.  An agency generally cannot act against each technical violation of the statute it is charged with enforcing.  The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

470 U.S. at 831-32.

---

[5] Petitioners' letter to the United States Attorney requested that he initiate revocation proceedings because Maharaj had "fraudulently obtained citizenship," and submitted documents allegedly showing that Maharaj had deserted the U.S. military, entered the United States illegally, obtained a "green card" through misrepresentation and concealment of material facts, failed to disclose criminal conduct, and was otherwise not of good moral character.  See Pet. for Writ of Mandamus at 5-6 & Ex. A.

[6] Section 1451(a), concerning the refusal to testify before a congressional committtee, provides only that such refusal will "constitute a ground for revocation." Section 1451(c), concerning membership in a disqualifying organization, provides only that such membership "shall be considered prima facie evidence" that such person was not attached to the principles of the U.S. Constitution and "in the absence of countervailing evidence, it shall be sufficient in the proper proceeding to authorize the revocation" of the person's naturalization.

Petitioners next argue that Heckler v. Chaney's presumption of unreviewability does not apply because the United States Attorney's failure to act implicates their constitutional right to due process.  See Pet'rs' Opp'n at 5-6, 10.  They argue that under United States v. Mendoza-Lopez, 481 U.S. 828 (1987), in order to comport with due process, an administrative proceeding -- such as a naturalization proceeding -- which plays a critical role in the subsequent imposition of a criminal sanction must be subject to meaningful review, and that because such review did not occur in the criminal case, due process requires that this review be had through a revocation of naturalization proceeding.[7]  See Pet'rs' Opp'n at 5-6.  The holding of Mendoza-Lopez, however, does not speak to the rights of third parties to administrative proceedings to challenge earlier proceedings.  Rather, the Supreme Court addressed whether a deportation proceeding that was "fundamentally unfair" to the subject alien could be used against the same alien in a subsequent criminal proceeding (a prosecution under 8 U.S.C. § 1326 for illegal reentry by an alien), without being subject to any review.  481 U.S. at 839-41.  In other words, a violation of the defendant's constitutional rights during the first proceeding was being used against him in a subsequent criminal proceeding.  In that context, the Court held that some meaningful review of the deportation proceeding was required before the deportation order could be used to establish the deportation element of the criminal offense.  Id.

---

[7] In the criminal case, the Court granted the government's motion in limine to preclude petitioners from introducing evidence at trial on the matter of whether Maharaj was qualified to become a naturalized U.S. citizen.  Clarke, 628 F. Supp. 2d at 13-14.  The Court reasoned that "§ 1451 sets forth the exclusive process for declaring the citizenship of a naturalized person void and one's citizenship remains valid until an order setting aside citizenship has been issued in compliance with § 1451"; hence, the jury had no authority to decide the validity of Maharaj's citizenship. Id. at 13; see also United States v. Clarke, 628 F. Supp. 2d 15, 22-25 (D.D.C. 2009) (denying motion for reconsideration).

In contrast, petitioners in the present case were not participants in the naturalization proceeding and had no rights at stake during that proceeding. Hence, Mendoza-Lopez does not indicate that they have a right to obtain review of the earlier administrative proceeding. See United States v. Afshari, 426 F.3d 1150, 1158 (9th Cir. 2005) (holding that Mendoza-Lopez was inapplicable where "the predicate [administrative] designation was against [a third party]," and "the defendants' rights were not directly violated in the earlier designation proceeding"). Therefore, Mendoza-Lopez does not suggest that Heckler v. Chaney is inapplicable, or that respondents otherwise have a "clear duty to act" on petitioners' revocation request.

Petitioners' final argument is that Heckler v. Chaney does not apply because the United States Attorney has adopted an interpretation of the statute that is a final agency action subject to judicial review under the Administrative Procedure Act. Specifically, according to petitioners, the declaration of Eli M. Rosenbaum, Director of the Office of Special Investigations at the Department of Justice, shows that the agency has "interpreted the statute not to require institution of revocation proceedings against deceased persons." Pet'rs' Opp'n at 9-12 (citing Rosenbaum Decl. filed in United States v. Clarke, Cr. 06-102, ECF #439, Ex. 3). The Rosenbaum declaration states, in relevant part:

> Based on my years of experience at OSI, and after consulting with several other longtime staff members, I can state with confidence that OSI has never instituted denaturalization proceedings against a deceased individual and has never continued to pursue denaturalization proceedings if a defendant died prior to their conclusion.
>
> Upon learning of the death of a suspect in a denaturalization investigation, OSI routinely closes the investigation.
>
> Upon learning of the death of a defendant against whom a denaturalization proceeding has been commenced, OSI routinely dismisses its denaturalization complaint or does not oppose the motion of defense counsel that the case be

dismissed with prejudice.

Rosenbaum Decl. ¶¶ 5-7 (citations omitted).

Petitioners contend that they are entitled to judicial review of that nonenforcement policy because Heckler v. Chaney is not applicable to this type of "substantive statutory interpretation" under Shell Oil v. EPA, 950 F.2d 741 (D.C. Cir. 1991), and Nat'l Wildlife Fed'n v. EPA, 980 F.2d 765, 773 (D.C. Cir. 1992). They misread those cases. In both Shell Oil and Nat'l Wildlife Fed'n, the D.C. Circuit held that the Chaney presumption of unreviewability did not apply to the challenged actions because the agency had adopted a rule announcing that it would not take enforcement actions in a whole class of cases. See Shell Oil, 950 F.2d at 764 (finding Chaney inapplicable because "EPA has announced, through rulemaking, that it will not take enforcement actions in a whole class of cases" under a "permit-shield rule"); Nat'l Wildlife Fed'n, 980 F.2d at 773 (finding Chaney inapplicable because the petitioner "raises a facial challenge to the EPA statutory interpretation embodied in [40 C.F.R.] § 142.17(a)(2) . . . and does not contest a particular enforcement decision"). Furthermore, the agency was interpreting the provisions of statutes granting it enforcement authority. Here, in contrast, there has been no rulemaking or anything resembling a substantive statutory interpretation akin to those in Shell Oil or NWF. Rather, Rosenbaum's description of the Department of Justice's nonenforcement with respect to deceased individuals is simply "[b]ased on [his] years of experience at OSI" and "consultation with several longtime staff members." Rosenbaum Decl. ¶¶ 5-7. Furthermore, he does not purport to interpret any provision of § 1451, but instead is describing the de facto practices at the Department. Accordingly, there is no "final agency action" or substantive statutory interpretation to review, and the Heckler v. Chaney presumption of unreviewability of nonenforcement

decisions remains applicable.

## **CONCLUSION**

For the foregoing reasons, respondents' motion to dismiss will be granted. Petitioners lack Article III standing and prudential standing to petition for a writ of mandamus ordering the United States Attorney for the District of Columbia to institute proceedings to revoke the U.S. citizenship of Balram Maharj. Even if they had standing, moreover, the petition fails to state a claim upon which relief can be granted because 8 U.S.C. § 1451 does not create a "clear duty to act" on petitioners' request or otherwise rebut the presumptive unreviewability of prosecutorial enforcement discretion. A separate order has been issued herewith.

/s/
JOHN D. BATES
United States District Judge

Date:   March 23, 2011